UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION
(AT DAYTON)

| | | |
|---|---|---|
| TEAMSTERS ALLIED BENEFIT FUNDS, Individually and On Behalf of All Others Similarly Situated, | ) ) ) ) | Civil Action No. 3:10-cv-251 |
| Plaintiff, | ) ) | |
| vs. | ) ) | **CLASS ACTION** |
| THOR INDUSTRIES, INC., PETER B. ORTHWEIN, and CHRISTIAN G. FARMAN, | ) ) ) ) | **COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** |
| Defendants. | ) ) | **(Jury Trial Demanded)** |

Plaintiff Teamsters Allied Benefit Funds ("Plaintiff"), by and through its undersigned counsel, alleges the following against Thor Industries, Inc. ("Thor" or the "Company") and certain of the Company's executive officers (the "Individual Defendants"). Plaintiff makes these allegations upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which included, without limitation: (a) review and analysis of public filings made by Thor and other related parties and non-parties with the Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants and other related non-parties; (c) review of news articles, shareholder communications, and postings on Thor's website concerning the Company's public statements; and (d) review of other publicly available information concerning Thor and the Individual Defendants.

**NATURE OF THE ACTION**

1.     This is a federal securities class action against Thor and certain of its officers and/or directors for violations of the federal securities laws.  Plaintiff brings this action on behalf of all persons or entities that purchased shares of Thor common stock between November 30, 2009 and June 10, 2010 at 12:13 PM Eastern Daylight Time, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.     Thor, together with its subsidiaries, manufactures and sells a range of recreation vehicles and small and mid-size buses, as well as related parts and accessories, in the United States and Canada.

3.     Plaintiff alleges that Defendants fraudulently inflated Thor's stock price by failing to disclose that certain accounting positions taken by the Company in its audited financial statements included in the Company's annual report on Form 10-K for the fiscal year ended July 31 2009 (the "2009 10-K"), as well as the unaudited financial statements included in the Company's Quarterly Reports on Form 10-Q for the periods ended January 31, 2009, April 30, 2009, October 31, 2009 and January 31, 2010, were inaccurate and may have to be restated, which may lead to an earnings decline.  It appears that Thor used its capital to support its business with dealer loans and consumer lenders to support floor inventory and sales, and failed to properly account for these maneuvers.

4.     On June 10, 2010, Thor shocked investors when the Company issued a press release mid-day announcing financial results for the third quarter of 2010 which included a note disclosing that it would not be filing its 10-Q on time and may have to restate the 2009 10-K and the first three 10-Qs for fiscal 2010 due to concerns from its auditor, Deloitte & Touche LLP ("Deloitte").  Prior to the announcement, Thor common stock was trading at $28.39.  On this

news, however, the Company's shares plummeted approximately 27% in intra-day trading, reaching a low of $20.74 before closing at $26.22.

5.     As a result of Defendants' wrongful acts, false and misleading statements and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

6.     This action arises under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b 5).

7.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and 1307 and Section 27 of the Exchange Act, 15 U.S.C. §78aa.

8.     The Court has personal jurisdiction over this action because Thor does business in this District.

9.     Venue is proper in this Judicial District pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa and 28 U.S.C. §1391(b).   Many of the acts and transactions alleged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this Judicial District.   Additionally, the Company maintains executive offices within this Judicial District, a substantial portion of the Company's business during the Class Period originated within this Judicial District, and Defendants have received substantial compensation in this Judicial District by doing business here and engaging in numerous activities that had an effect in this Judicial District.

10.     In connection with the acts and omissions alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but

not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

### Plaintiff

11.     Plaintiff Teamsters Allied Benefit Funds, as set forth in the accompanying certification and incorporated by reference herein, purchased the publicly traded securities of Thor during the Class Period and has been damaged thereby.

### Defendants

#### The Company

12.     Defendant Thor is a corporation incorporated under the laws of Delaware with headquarters in Ohio.  During the Class Period, Thor maintained executive offices at 419 West Pike Street, Jackson Center, OH 45334.

#### The Individual Defendants

13.     Defendant Peter B. Orthwein ("Orthwein") served as the Chief Executive Officer, Chairman and President of the Company at all relevant times herein.

14.     Defendant Christian G. Farman ("Farman") served as the Chief Financial Officer of the Company at all relevant times.

15.     Defendants Orthwein and Farman are referred to as the "Individual Defendants."

16.     During the Class Period, the Individual Defendants, as senior executive officers and/or directors of Thor, were privy to confidential, proprietary and material adverse non-public information concerning Thor, its operations, finances, financial condition and present and future business prospects via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and/or board of directors meetings and committees thereof, and via reports and other information provided to them in

connection therewith. Because of their possession of such information, the Individual Defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

17. The Individual Defendants are liable as direct participants in the wrongs complained of herein. In addition, the Individual Defendants, by reason of their status as senior executive officers and/or directors, were "controlling persons" within the meaning of §20(a) of the Exchange Act and had the power and influence to cause the Company to engage in the unlawful conduct complained of herein. Because of their positions of control, the Individual Defendants were able to and did, directly or indirectly, control the conduct of Thor's business.

18. The Individual Defendants, because of their positions with the Company, controlled and/or possessed the authority to control the contents of its reports, press releases and presentations to securities analysts and through them, to the investing public. The Individual Defendants were provided with copies of the Company's reports and publicly disseminated documents alleged herein to be misleading, prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Thus, the Individual Defendants had the opportunity to commit the fraudulent acts alleged herein.

19. As senior executive officers and/or directors and as controlling persons of a publicly traded company whose securities were, and are, registered with the SEC pursuant to the Exchange Act, and were traded on the NYSE and governed by the federal securities laws, the Individual Defendants had a duty to disseminate promptly accurate and truthful information with respect to Thor's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings, and present and future business prospects, to correct any previously issued statements that had become materially misleading or untrue, so the

market price of Thor's securities would be based on truthful and accurate information.  The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

20. The Individual Defendants are liable as participants in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Thor's publicly traded securities by disseminating materially false and misleading statements and/or concealing material adverse facts.

## SUBSTANTIVE ALLEGATIONS

### Factual Background

21. Thor, together with its subsidiaries, manufactures and sells a range of recreation vehicles and small and mid-size buses, as well as related parts and accessories in the United States and Canada.  The Company offers a range of travel trailers and motorhomes under the trade name of Airstream, which include Airstream Safari, International, Flying Cloud, and Bambi travel trailers, as well as Interstate Class B motorhomes.  Thor also manufactures and sells conventional travel trailers and fifth wheels under the trade names of Dutchmen, Four Winds, Aero, Grand Junction, Colorado, Cruiser, Seville, Zinger, and Sunset Trail; travel trailers and fifth wheels under trade names of Montana, Springdale, Hornet, Sprinter, Outback, Laredo, Everest, Mountaineer, Challenger, Cougar, Komfort, and Trailblazer; and gasoline and diesel Class C, Class A, and Class B motorhomes under the trade names of Four Winds, Hurricane, Windsport, Mandalay, Dutchmen, Chateau, Serrano, Ventura, and Fun Mover.

22. In addition, Thor manufactures and sells gasoline and diesel Class A motor homes under the trade names of Daybreak, Challenger, Astoria, Tuscany, Outlaw, and Avanti; travel trailers, fifth wheels, truck campers, and park models under the trade name of General Coach; and park models under the trade names of Tranquility, Westchester, and Breckenridge.  Further,

the Company manufactures small and mid-size transit and commercial buses under the trade names of Aerolite, AeroElite, Aerotech, Escort, MST, Transmark, EZ Rider, Axess, Challenger, Defender, Crusader, American Cruiser, Classic Coach, EZ Trans, GC II, and Pacer.

23.     Thor markets its vehicles through independent dealers to municipalities and private purchasers, such as rental car companies and hotels.  The Company has a joint venture agreement with Cruise America, Inc. to provide short-term rentals of motorized recreation vehicles to the public.  The Company was founded in 1980 and is based in Jackson Center, Ohio.

**Thor's Credit Agreements**

24.     On January 22, 2009, Thor filed with the SEC a Form 8-K (the "1/22/09 Form 8-K") in which the Company announced that on January 15, 2009, Thor had entered into a definitive agreement pursuant to which the Company would lend $10 million to one of its dealers.  The 1/22/09 Form 8-K provides in pertinent part:

> On January 15, 2009, Thor Industries, Inc. (the "Company") entered into a Credit Agreement (the "Credit Agreement") with Stephen Adams, in his individual capacity, and Stephen Adams and his successors, as trustee under the Stephen Adams Living Trust (the "Trust" and together with each of the foregoing persons, the "Borrowers"), pursuant to which the Company loaned $10 million to the Borrowers (the "Loan"). The Borrowers own approximately 90% of FreedomRoads Holding Company, LLC ("FreedomRoads"), the parent company of one of the Company's dealers, and pursuant to the terms of the Credit Agreement, the Borrowers agreed to use the proceeds of the Loan solely to make an equity contribution to FreedomRoads to enable FreedomRoads to repay its principal obligations under floorplan financing arrangements with third parties in respect of products of the Company and its subsidiaries.
>
> The principal amount of the Loan is payable in full on January 15, 2014 and bears interest at a rate of 12% per annum. Interest is payable in kind for the first year of the Loan and is payable in cash on a monthly basis thereafter. The Credit Agreement also contains customary representations and warranties, affirmative and negative covenants, events of default and acceleration provisions for a loan of this type.
>
> The obligations of the Borrowers under the Credit Agreement are guaranteed by FreedomRoads and are secured by a first priority security interest in all of the

direct and indirect legal, equitable and beneficial interests of the Borrowers in FreedomRoads.

In connection with the Loan, the Borrowers caused FreedomRoads and its subsidiaries (collectively, the "FR Dealers"), to enter into an agreement pursuant to which the FR Dealers agreed to purchase additional recreation vehicles from the Company and its subsidiaries. The term of this agreement continues until the repayment in full of the Loan under the Credit Agreement (including any refinancing or replacement thereof).

25.     On February 3, 2009, Thor filed with the SEC a Form 8-K (the "2/3/09 Form 8-K") in which the Company announced that on January 30, 2009, Thor had entered into another definitive agreement pursuant to which the Company would lend an additional $10 million to one of its dealers.  The 2/3/09 Form 8-K provides in pertinent part:

On January 30, 2009, Thor Industries, Inc. (the "Company") entered into a Credit Agreement (the "Credit Agreement") with Stephen Adams, in his individual capacity, and Stephen Adams and his successors, as trustee under the Stephen Adams Living Trust (the "Trust" and together with each of the foregoing persons, the "Borrowers"), pursuant to which the Company loaned $10 million to the Borrowers (the "Loan"). The Loan is in addition to a separate $10 million loan provided by the Company to the Borrowers on January 15, 2009 (the "Prior Loan"). The Borrowers own approximately 90% of FreedomRoads Holding Company, LLC ("FreedomRoads"), the parent company of one of the Company's dealers, and pursuant to the terms of the Credit Agreement, the Borrowers agreed to use the proceeds of the Loan solely to make an equity contribution to FreedomRoads to be used by FreedomRoads to purchase the Company's products.

The principal amount of the Loan is payable in full on January 29, 2010 and bears interest at a rate of 12% per annum. Interest is payable in cash on the following dates: April 30, 2009, July 31, 2009, October 30, 2009 and January 29, 2010. The Credit Agreement also contains customary representations and warranties, affirmative and negative covenants, events of default and acceleration provisions for a loan of this type.

The obligations of the Borrowers under the Credit Agreement are guaranteed by FreedomRoads and are secured by a first priority security interest in all of the direct and indirect legal, equitable and beneficial interests of the Borrowers in FreedomRoads.

In connection with the Loan, FreedomRoads and its subsidiaries (collectively, the "FR Dealers") and the Company amended their prior agreement pursuant to

which the FR Dealers agreed to purchase additional recreation vehicles from the Company and its subsidiaries to provide that the term of this agreement now continues until the repayment in full of the Prior Loan and the Loan under the Credit Agreement (including any refinancing or replacement thereof).

**False and Misleading Statements**

26.     The Class Period commences on November 30, 2009.  On that date, Thor issued a press release announcing financial results for the first quarter of fiscal 2010 ending October 31, 2009 (the "11/30/09 Press Release").  The 11/30/09 Press Release provided in pertinent part as follows:

> Thor Industries, Inc. (NYSE: THO) today reported increased sales, net income and E.P.S. for the first quarter ended October 31, 2009.  Net income was $23,429,000, more than quadruple last year's $5,120,000. E.P.S. were 42 cents versus 9 cents last year.  Sales for the quarter were $502.6 million, up 15% from $438.8 million.
>
> RV income before tax in the quarter was $31,642,000, up more than five-fold from $5,772,000 last year.  Bus income before tax was $8,380,000, up 58% from $5,297,000 last year.  RV sales in the quarter were $389.9 million, up 18% from $330.4 million last year.  Bus sales in the quarter were $112.6 million, up 4% from $108.4 million last year.  Net corporate costs were $2.8 million, the same as the prior year.

27.     Also in the 11/30/09 Press Release, Defendant Orthwein emphasized the strong financial position of the Company:

> Thor's financial condition remains excellent.  Cash, cash equivalents and investments were $329 million, even after distributing a special dividend of 50 cents per share or $27.7 million to Thor shareholders in the quarter.  Results are much improved, driven by aggressive cost cutting, strong towable and modest motorized RV sales increases, and greater efficiencies in Bus.  We were profitable in all business segments in the quarter, including motor homes, and our backlog remains at record levels for this time of year.

28.     Also on November 30, 2009, Thor filed with the SEC a Form 10-Q for the quarter ended October 31, 2009, which was signed by Defendants Orthwein and Farman and reiterated the financial results announced in the 11/30/09 Press Release.

29.     On December 17, 2009, Thor issued a press release announcing that the Company purchased shares of its common stock from the Estate of Wade F. B. Thompson (the "Estate") in a private transaction (the "12/17/09 Press Release").  The Estate held all of the stock of the late Wade F. B. Thompson, Thor's former Chief Executive Officer.  Pursuant to the terms of a repurchase agreement, 3,091,000 shares of Thor's common stock were purchased at a price of $29 per share.  According to the 12/17/09 Press Release, the repurchase represented 5.6% of Thor's common stock outstanding at the time.

30.     On December 23, 2009, Thor filed with the SEC a Form 8-K (the "12/23/09 Form 8-K") announcing that on December 22, 2009, the Company entered into a credit agreement with one of its dealers.  The 12/23/09 Form 8-K provides in pertinent part:

> On December 22, 2009, Thor Industries, Inc. (the "Company") entered into a Credit Agreement (the "Credit Agreement") with Marcus Lemonis, Stephen Adams, in his individual capacity, and Stephen Adams and his successors, as trustee under the Stephen Adams Living Trust (the "Trust" and together with each of the foregoing persons, on a joint and several basis, the "Borrowers"), pursuant to which the Company loaned $10 million to the Borrowers (the "Loan"). The Borrowers own approximately 95% of FreedomRoads Holding Company, LLC ("FR Holding"), the indirect parent company of FreedomRoads, LLC ("FreedomRoads"), and pursuant to the terms of the Credit Agreement, the Borrowers agreed to use the proceeds of the Loan solely to provide a loan to one of FR Holding's subsidiaries which would ultimately be contributed as equity to FreedomRoads to be used for working capital purposes. For fiscal year 2009, Freedom Roads accounted for 15% of the Company's consolidated recreation vehicle net sales and 11% of the Company's consolidated net sales among Freedom Roads 47 dealership locations in 26 U.S. states.
>
> The principal amount of the Loan is payable in full on December 22, 2014 (the "Maturity Date") and bears interest at a rate of 12% per annum. Interest is payable, at the Borrower's option, either in cash or in kind on the following dates: March 31, 2010, June 30, 2010, September 30, 2010, December 31, 2010, March 31, 2011, June 30, 2011, and September 30, 2011. Interest is payable in cash quarterly in arrears from December 31, 2011 through the Maturity Date. The principal amount of the Loan is payable on the following dates in the following amounts: December 31, 2011 — $500,000; December 31, 2012 — $1,000,000; December 31, 2013 — $1,100,000, and December 22, 2014 — $7,400,000. The Credit Agreement also contains customary representations and warranties,

affirmative and negative covenants, events of default and acceleration provisions for a loan of this type.

In connection with the Loan, FR Holding and its subsidiaries (collectively, the "FR Dealers") and the Company amended their prior agreement pursuant to which the FR Dealers agreed to purchase additional recreation vehicles from the Company and its subsidiaries to provide that the term of this agreement now continues until December 22, 2029 unless earlier terminated in accordance with its terms (the "Exclusivity Agreement Amendment").

Also in connection with the Loan, the Credit Agreement, dated January 15, 2009, by and between the Company, Stephen Adams and the Trust was amended to, among other things, provide for a cross default with the Loan and to add certain additional events of default (the "Amendment to the First Loan").

In addition, the Credit Agreement, dated January 30, 2009, by and between the Company, Stephen Adams and the Trust was amended to, among other things, extend the maturity date to June 30, 2012, provide for semi-annual payments of principal in the principal amount of $1,000,000 commencing on June 30, 2010, provide for a cross default with the Loan and add certain additional events of default (the "Amendment to the Second Loan"). Interest at 12% per annum will continue to be payable in cash on a quarterly basis. In connection with the Amendment to the First Loan and the Amendment to the Second Loan, the guaranty of the loans made in connection therewith by FR Holding and the pledge by Stephen Adams and the Trust of their respective equity interests of FR Holding were each terminated.

31.     On February 3, 2010, Thor issued a press release in which it reported preliminary sales for the quarter and six months ended January 31, 2010 (the "2/3/10 Press Release"). The 2/3/10 Press Release provided in pertinent part:

Thor Industries (NYSE:THO) announced today preliminary sales for the quarter and six months ended January 31, 2010. Sales in the quarter were $429 million, almost double the $227 million from last year. RV sales were $335 million, up 148% from $135 million last year. Bus sales were $94 million, up 2% versus $92 million last year.

Sales in the 6 months were $932 million, up 40% from $665 million last year. RV sales were $726 million, up 56% from $465 million last year. Bus sales were $206 million, up 3% from $200 million last year.

Backlog on January 31, 2010 was a record $711 million, up 81% from $392 million last year. RV backlog was $449 million, up 157% from $175 million last

year.  Bus backlog was $262 million, up 21% from $217 million last year. Cash, cash equivalents and investments on January 31, 2010 were $155 million.

32.     In the 2/3/10 Press Release, Defendant Orthwein stated that "Thor's record backlog is indicative of improving RV market conditions and continuing strength in bus.  RV retail shows have been much improved so far this season which leads us to anticipate continued performance gains throughout 2010."

33.     On March 8, 2010, Thor issued a press release in which it announced financial results for the second fiscal quarter and six months ended January 31, 2010 (the "3/8/10 Press Release").  The 3/8/10 Press Release stated in pertinent part:

Thor Industries, Inc. (NYSE: THO) today reported increased sales, net income and E.P.S. for the second quarter and six months ended January 31, 2010.  Net income for the second quarter was $11,924,000 versus a loss of $14,860,000 last year.  E.P.S. were 22 cents versus a loss of 27 cents last year.  Sales for the second quarter were $430.0 million, up 90% from $226.7 million last year.  Net income for the six months was $35,353,000, compared to a loss of $9,740,000 last year.  E.P.S. for the six months were 65 cents versus a loss of 18 cents last year.  Sales for the six months were $932.6 million, up 40% from $665.5 million last year.

RV income before tax in the quarter was $18,057,000 compared to a loss of $19,840,000 last year.  Bus income before tax in the quarter was $6,233,000, up 67% from $3,723,000 last year.  RV sales in the quarter were $335.8 million, up 150% from $134.6 million last year.  Bus sales in the quarter were $94.2 million, up 2% from $92.1 million last year.  Net corporate costs in the quarter were $5.0 million vs. $6.8 million last year.

RV income before tax for the six months ended January 31, 2010 was $49,699,000 compared to a loss of $14,068,000 last year, a $64 million turnaround.  Bus income before tax for the six months was $14,613,000, up 62% from $9,020,000 last year.  RV sales for the six months ended January 31, 2010 were $725.7 million, up 56% from $465.0 million last year.  Bus sales for the six months ended January 31, 2010 were $206.9 million, up 3% from $200.5 million last year.  Net corporate costs for the six months ended January 31, 2010 were $7.8 million versus $9.7 million last year.

34.     In the 3/8/10 Press Release, Defendant Orthwein stated:

> Thor's results continue to progress, propelled by improving RV market conditions and strong bus efficiencies. We continue to be profitable in all segments of our businesses, including motor homes, reflecting the permanent cost reductions we have made.

35.     Also on March 8, 2010, Thor filed with the SEC its Form 10-Q for the period ended January 31, 2010, which was signed by Defendants Orthwein and Farman and reiterated the financial results reported in the press release of February 3, 2010.

**The Truth Comes To Light**

36.     On June 10, 2010, during the trading session at approximately 12:13 p.m. EDT, Thor issued a press release in which it announced preliminary results for the third quarter and nine months ended April 30, 2010 (the "6/10/10 Press Release"). A note at the end of the 6/10/10 Press Release revealed that the Company would delay filing its Form 10-Q with the SEC for the period ended April 30, 2010 because its auditor, Deloitte, had identified accounting issues that may force a restatement of Thor's 2009 Form 10-K and the three Form 10-Qs for the first three quarters of fiscal 2010. The 6/10/10 Press Release provides in pertinent part:

> Thor Industries, Inc. (NYSE:THO) announced preliminary results for the third quarter and nine months ended April 30, 2010. As disclosed below, Thor's auditors have not yet completed their review under SAS100 of the third quarter results.
>
> Sales for the quarter were $680,192,000, up 64% from $415,472,000 last year. Net income for the quarter was $34,111,000, up dramatically from $2,102,000 last year. E.P.S. for the quarter were 66¢ versus 4¢ last year.
>
> Sales for the nine months were $1,612,769,000, up 49% from $1,080,972,000 last year. Net income for the nine months was $69,464,000 versus a net loss of $7,638,000 last year. E.P.S. for the nine months were $1.30 versus a loss of 14¢ last year.
>
> RV sales in the quarter were $559,166,000, up 79% from $312,041,000 last year. Towable RV sales in the quarter were $468,002,000, up 77% from $264,317,000 last year. Motorized RV sales in the quarter were $91,164,000, up 91% from $47,724,000 last year. RV sales in the nine months were $1,284,891,000, up 65%

from $777,016,000 last year. Towable RV sales in the nine months were $1,090,842,000, up 64% from $664,517,000 last year. Motorized RV sales in the nine months were $194,049,000, up 73% from $112,499,000 last year. Bus segment sales in the quarter, including buses and ambulances, were $121,026,000, up 17% from $103,431,000 last year. Bus segment sales in the nine months were a record $327,878,000, up 8% from $303,956,000 last year.

RV income before tax in the third quarter was $48,754,000, more than seven times $6,860,000 last year. Towable RV income before tax in the quarter was $45,114,000, up 146% from $18,374,000 last year. Motorized RV income before tax in the quarter was $3,640,000, versus a loss of $11,514,000 last year. RV income before tax in the nine months was $98,453,000 versus a loss of $7,208,000 last year. Towable RV income before tax in the nine months was $93,397,000, more than quadruple $21,197,000 last year. Motorized RV income before tax in the nine months was $5,056,000, versus a loss of $28,405,000 last year. Bus segment income before tax in the quarter was $9,142,000, up more than sevenfold from $1,243,000 last year and was $23,755,000 in the nine months, up 131% from $10,263,000 last year. Corporate net costs were $5,691,000 in the quarter versus $3,531,000 last year and $13,497,000 in the nine months versus $13,184,000 last year.

"These results are in excess of analyst consensus estimates, which were raised during the quarter," said Peter B. Orthwein, Thor chairman. "Thor's improved margins demonstrate the effect of our aggressive cost-cutting efforts, leading to better opportunity going forward. Thor is encouraged by the RV industry's recovery, including our internal retail results through May, 2010. We continue to have a strong cash position and zero debt, which will help fuel additional growth in the future," he added.

The Company will file a Form 12b-25 (Notification of Late Filing and Application for Extension to File) with the Securities and Exchange Commission with respect to its Quarterly Report on Form 10-Q for the period ended April 30, 2010 (the "Company's 10-Q"). The extension is required because the Company's independent auditor, Deloitte & Touche LLP ("Deloitte"), has not yet completed its review of the interim financial statements to be included in the Company's 10-Q due to their evaluation of certain accounting positions previously taken by the Company in its audited financial statements included in the Company's Annual Report on Form 10-K for the fiscal year ended July 31, 2009 (the "Company's 10-K") and the unaudited financial statements included in the Company's Quarterly Reports on Form 10-Q for the periods ended January 31, 2009, April 30, 2009, October 31, 2009 and January 31, 2010.

In this regard, Deloitte is addressing issues relating to the accounting treatment for (a) the Company's transactions with Stephen Adams and FreedomRoads that were consummated in January 2009, and (b) repurchase reserves relating to agreements with lenders to the Company's independent dealers and revenue

recognition issues with respect to transactions with its independent dealers. The Company's accounting treatment for these matters is described in the Company's 10-K. The Company continues to work with Deloitte to address these matters. If the Company is required to change its accounting for these items, there could be material adverse changes to the Company's results of operations and financial condition for fiscal 2009 and for the first three quarters of fiscal 2010.

37.     Thor's announcement shocked the market.  On June 9, 2010, Thor common stock closed at $28.04.  On June 10, 2010, prior to the 12:13 p.m. EDT announcement, Thor common stock was trading at $28.39.  On this news, however, the Company's shares plummeted approximately 27% in intra-day trading, reaching a low of $20.74 before closing at $26.22.

38.     On June 13, 2010, Alan Brochstein of the *Seeking Alpha* wrote an article entitled: "Thor Industries: More Than Just Accounting Concerns Signal Caution."  The article stated in pertinent part:

THO experienced some serious ouch again this week:



The catalyst for the decline was a note in their press release following their 3rd quarter earnings. The company will not be filing its 10-Q on time and may have to restate its previous 10-K and the first three Qs for fiscal 2010 due to concerns of their auditor. For some background, the company has been very public about their use of their substantial capital to support their business with loans to a dealer to support floor inventory as well as with a third-party consumer lender. I am not an

accountant, but the issues could result in a revenue restatement with an earnings decline.

* * *

Well, this is enough to scare away most investors, as it questions management's financial capability and the validity of the current earnings, but there is more to the story in my opinion. When founder Wade Thompson passed away late last year, the company, which had resisted using its massive cash hoard to repurchase stock when it was at 10, decided to buy back some of his substantial holdings in a very rushed manner, paying 29 for almost 4mm shares. I can tell it was in great haste, as it occurred just 5 weeks after Thompson's passing. They also issued an erroneous press release initially describing the transaction (misstated the percentage of the company).

Another concern I have is how much they had to pay Ron Fenech to step up and run the RV division. These details were determined 4 months after his appointment. I note also the nepotism that continues within the company, with the bus division being run by Thompson's son-in-law, Dicky Riegel. While I had respected the large insider ownership at THO, I get the feeling now that there is a sense of entitlement among key employees given the issues regarding the share repurchase (now underwater) and the management structure (with Peter Orthwein stepping up to be CEO, but is he really acting as CEO?).

* * *

39.     As a result of Defendants' wrongful course of conduct, Thor shareholders have lost millions of dollars in their investment in the Company.

## THE INDIVIDUAL DEFENDANTS' LIES AND OMISSIONS

40.     Thor's statements and filings during the Class Period were materially false and misleading because they failed to disclose and misrepresented: (1) that the Company failed to disclose that certain accounting positions taken by the Company in its financial statements were inaccurate and may have to be restated, which may lead to an earnings decline; (2) that the Company lacked significant oversight processes and procedures; (3) that as a result of this, the Company's financial results were materially inflated at all relevant times; and (4) that the Company lacked adequate internal and financial controls.

41.     In addition to the false and misleading statements described in detail herein, Defendants also failed to disclose the truth regarding Thor's financial condition.  Specifically, and in addition to the other omissions described herein, Defendants failed to tell the public the true risks the Company faced with regard to its business operations, and failed to disclose that the Company was operating with inadequate internal and financial controls.  As a result, Thor's reported financial results were materially false and misleading.

## UNDISCLOSED ADVERSE INFORMATION

42.     The market for Thor's securities was an open, well-developed and efficient market at all relevant times.  As a result of the materially false and misleading statements and failures to disclose described herein, Thor's securities traded at artificially inflated prices during the Class Period.  Plaintiff and the other members of the Class purchased or otherwise acquired Thor's securities relying upon the integrity of the market price of Thor's securities and market information related to Thor, and have been damaged thereby.

43.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Thor's securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading.  Such statements and omissions were materially false and misleading in that they failed to disclose material adverse non-public information and misrepresented the truth about the Company, its business and operations, as alleged herein.

44.     At all relevant times, the material misrepresentations and omissions particularized herein directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and the other members of the Class.  As described herein, during the Class

Period, Defendants made or caused to be made a series of materially false and misleading statements about Thor's business, prospects and operations.

45. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Thor and its business, prospects and operations, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## SCIENTER ALLEGATIONS

46. As alleged herein, the Individual Defendants acted with scienter in that the Individual Defendants knew that the public documents and statements issued or disseminated in the name of the Company during the Class Period were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

47. As set forth herein, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Thor, their control over, receipt and/or modification of Thor's allegedly materially misleading statements and omissions, and/or their positions with the Company which made them privy to confidential information concerning Thor, participated in the fraudulent scheme alleged herein.

48. The ongoing fraudulent scheme described herein could not have been perpetrated over a substantial period of time, as has occurred, without the knowledge and complicity of the personnel at the highest level of the Company, including the Individual Defendants.

## STATUTORY SAFE HARBOR

49.     The federal statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded herein. Furthermore, many of the statements pleaded herein were not identified as "forward-looking statements" when made, or indicated that actual results "could differ materially from those projected."  Nor were there any meaningful cautionary statements identifying important factors that could cause actual results to differ materially from the statements made therein.

50.     Defendants are liable for the statements pleaded because, at the time each of those statements was made, Defendants knew the statement was false and the statement was authorized and/or approved by an executive officer of Thor who knew that such statement was false when made.

## LOSS CAUSATION

51.     During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the prices of Thor's securities and operated as a fraud or deceit on Class Period purchasers of Thor's securities by failing to disclose to investors that the Company's financial results were materially misleading and misrepresented material information.  When Defendants' misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the prices of Thor's securities fell precipitously as the prior inflation came out of the Company's stock price.  As a result of their purchases of Thor's securities during the Class Period, Plaintiff and the other Class members suffered economic loss.

52.     By failing to disclose the true state of the Company's business prospects and growth strategy, investors were not aware of the true state of the Company's financial status.

Therefore, Defendants presented a misleading picture of Thor's business and prospects. Thus, instead of truthfully disclosing during the Class Period the true state of the Company's business, Defendants caused Thor to conceal the truth.

53. Defendants' false and misleading statements had the intended effect and caused Thor's common stock to trade at artificially inflated levels throughout the Class Period. However, as a direct result of the Company's problems coming to light, Thor's common stock price fell approximately 27% percent in intra-day trading immediately following the announcement of the Company's true financial state before closing at an approximate 7% drop from the prior trading day. This drop caused real economic loss to investors who purchased the Company's securities during the Class Period.

54. The decline in the price of Thor's common stock after the truth came to light was a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market. The timing and magnitude of Thor's common stock price decline negates any inference that the loss suffered by Plaintiff and the other Class members was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to the Defendants' fraudulent conduct. The economic loss suffered by Plaintiff and the other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the prices of Thor's securities and the subsequent decline in the value of Thor's securities when Defendants' prior misrepresentations and other fraudulent conduct were revealed.

**APPLICABILITY OF PRESUMPTION OF RELIANCE:**
**FRAUD ON THE MARKET DOCTRINE**

55. At all relevant times, the market for Thor stock was an efficient market for the following reasons, among others:

a.      Thor securities met the requirements for listing, and were listed and actively traded on the NYSE, a highly efficient market;

b.      As a regulated issuer, Thor filed periodic public reports with the SEC and the NYSE;

c.      Thor securities were followed by securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace; and

d.      Thor regularly issued press releases which were carried by national newswires.  Each of these releases was publicly available and entered the public marketplace.

56.     As a result, the market for Thor securities promptly digested current information with respect to the Company from all publicly-available sources and reflected such information in Thor's stock price.  Under these circumstances, all purchasers of Thor securities during the Class Period suffered similar injury through their purchase of stock at artificially inflated prices and a presumption of reliance applies.

## CLASS ACTION ALLEGATIONS

57.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of all persons who purchased or otherwise acquired Thor securities during the Class Period and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, members of the immediate family of each of the Individual Defendants, any subsidiary or affiliate of Thor and the directors, officers and employees of the Company or its subsidiaries or affiliates, or any entity in which any excluded person has a

controlling interest, and the legal representatives, heirs, successors and assigns of any excluded person.

58.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of members of the Class located throughout the United States.  Throughout the Class Period, Thor securities were actively traded on the NYSE (an open and efficient market) under the symbol "THO".  As of January 31, 2010, the Company had approximately 51.46 million shares outstanding.  Record owners and other members of the Class may be identified from records maintained by Thor and/or its transfer agents and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.

59.     Plaintiff's claims are typical of the claims of the other members of the Class as all members of the Class were similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

60.     Plaintiff will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.

61.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

a.      whether the federal securities laws were violated by Defendants' acts and omissions as alleged herein;

b.      whether Defendants participated in and pursued the common course of conduct complained of herein;

c.      whether documents, press releases, and other statements disseminated to the investing public and the Company's shareholders during the Class Period misrepresented material facts about the business, finances, financial condition and prospects of Thor;

d.      whether statements made by Defendants to the investing public during the Class Period misrepresented and/or omitted to disclose material facts about the business, finances, value, performance and prospects of Thor;

e.      whether the market price of Thor common stock during the Class Period was artificially inflated due to the material misrepresentations and failures to correct the material misrepresentations complained of herein; and

f.      the extent to which the members of the Class have sustained damages and the proper measure of damages.

62.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this suit as a class action.

**COUNTS AGAINST DEFENDANTS UNDER THE EXCHANGE ACT**

**COUNT I**
**For Violations Of §10(b) Of The Exchange Act And Rule 10b-5**
**Promulgated Thereunder Against Defendants**

63.     Plaintiff repeats and realleges the allegations set forth above as though fully set forth herein.  This claim is asserted against Defendants.

64.     During the Class Period, Thor and the Individual Defendants, and each of them, carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Thor common stock; and (iii) cause Plaintiff and other members of the Class to purchase Thor stock at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

65.     These Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Thor securities in violation of §10(b) of the Exchange Act and Rule 10b-5.  Defendants are sued as primary participants in the wrongful and illegal conduct charged herein.  The Individual Defendants are also sued herein as controlling persons of Thor, as alleged herein.

66.     In addition to the duties of full disclosure imposed on Defendants as a result of their making of affirmative statements and reports, or participation in the making of affirmative statements and reports to the investing public, they each had a duty to promptly disseminate truthful information that would be material to investors in compliance with the integrated disclosure provisions of the SEC as embodied in SEC Regulation S X (17 C.F.R. §210.01 *et seq.*) and S-K (17 C.F.R. §229.10 *et seq.*) and other SEC regulations, including accurate and truthful information with respect to the Company's operations, financial condition and

performance so that the market prices of the Company's publicly traded securities would be based on truthful, complete and accurate information.

67.     Thor and the Individual Defendants, individually and in concert, directly and indirectly, by the use of means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, business practices, performance, operations and future prospects of Thor as specified herein.   These Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Thor's value and performance and substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Thor and its business, operations and future prospects, in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Thor's securities during the Class Period.

68.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) each of the Individual Defendants was a high-level executive and/or director at the Company during the Class Period; (ii) each of the Individual Defendants, by virtue of his responsibilities and activities as a senior executive officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's operational and financial projections and/or reports; (iii) the Individual Defendants enjoyed significant personal contact and familiarity with each other and

were advised of and had access to other members of the Company's management team, internal reports, and other data and information about the Company's financial condition and performance at all relevant times; and (iv) the Individual Defendants were aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

69. These Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were readily available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Thor's operating condition, business practices and future business prospects from the investing public and supporting the artificially inflated price of its stock. As demonstrated by their overstatements and misstatements of the Company's financial condition and performance throughout the Class Period, the Individual Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were severely reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

70. As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Thor securities was artificially inflated during the Class Period. In ignorance of the fact that the market price of Thor shares was artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by these Defendants during the

Class Period, Plaintiff and the other members of the Class acquired Thor securities during the Class Period at artificially inflated high prices and were damaged thereby.

71.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known of the true performance, business practices, future prospects and intrinsic value of Thor, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired Thor securities during the Class Period, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

72.     By virtue of the foregoing, Thor and the Individual Defendants each violated §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

73.     As a direct and proximate result of the Individual Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

<u>**COUNT II**</u>
**For Violations of §20(a) of the Exchange Act**
**Against the Individual Defendants**

74.     Plaintiff repeats and realleges the allegations set forth above as if set forth fully herein.  This claim is asserted against the Individual Defendants.

75.     The Individual Defendants were and acted as controlling persons of Thor within the meaning of §20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions with the Company, participation in and/or awareness of the Company's operations and/or intimate knowledge of the Company's actual performance, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the

decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Each of the Individual Defendants was provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

76. In addition, each of the Individual Defendants had direct involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

77. As set forth above, Thor and the Individual Defendants each violated §10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their controlling positions, the Individual Defendants are liable pursuant to §20(a) of the Exchange Act. As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for judgment as follows:

A. Declaring this action to be a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Class defined herein;

B. Awarding Plaintiff and the other members of the Class damages in an amount which may be proven at trial, together with interest thereon;

C.      Awarding Plaintiff and the members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' and experts' witness fees and other costs; and

D.      Awarding such other relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury.

Respectfully submitted,

Dated: June 25, 2010

/s/Richard S. Wayne
Richard S. Wayne Attorney Bar No. 0022390
/s/Thomas P. Glass
Thomas P. Glass Attorney Bar No. 0062382

OF COUNSEL:

STRAUSS & TROY
150 East Fourth Street

SAXENA WHITE
Maya Saxena
Joseph E. White III
Christopher S. Jones
Lester R. Hooker
2424 N. Federal Highway, Suite 257
Boca Raton, FL 33431
Telephone: (561) 394-3399
Facsimile:  (561) 394-3082

Cincinnati, OH  45202-4018
Telephone: (513) 621-2120
Facsimile:  (513) 629-9426
E-mail: *rswayne@strausstroy.com*
E-mail: *tpglass@strausstroy.com*

2246485_1.DOC